[No. 8429.  Department One.  February 26, 1910.]

I. N. HUFFMAN, *Respondent*, v. OREGON RAILROAD & NAVIGATION COMPANY, *Appellant*.[1]

RAILROADS—FENCES—CROSSINGS—STATUTES—IMPLIED REPEAL. The railroad fence act of 1893, Rem. & Bal. Code, § 8729, requiring railroads, where the same person owns land on both sides of the track, to put in and maintain necessary crossings and gates, was impliedly repealed by the acts of 1903 and 1907, covering the same subject, Rem. & Bal. Code, § 8730, which provided that the owner shall have the right to put in gates for his use at such places as may be convenient.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered February 10, 1909, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to recover a penalty.  Reversed.

*W. W. Cotton, Samuel R. Stern,* and *W. A. Robbins,* for appellant.

*P. C. Shine,* for respondent.

RUDKIN, C. J.—The complaint in this action alleges:

"(1)  That the plaintiff is now and ever since the 20th day of April, 1889, has been the owner, under patent from the United States, of the following described lands, situate in the county of Spokane, state of Washington, to wit: The East half of the Northeast Quarter of Section 34, Township 22 North, Range 44 E. W. M., and that said lands are and were at all times hereinafter mentioned occupied, enclosed and cultivated by the plaintiff.

"(2)  That the defendant, The Oregon Railroad & Navigation Company, is a corporation organized and existing under and by virtue of the laws of the state of Oregon, and is the owner of, and engaged in the operation of a line of railroad running through and across said lands, which said line of railroad and the tracks thereof are now, and were on the date hereinafter mentioned, fenced and enclosed throughout the entire length thereof.

[1]Reported in 107 Pac. 362.

"(3)   That in order to give the plaintiff, together with his stock, access to the several parts of said lands, it is necessary that the defendant should put in place, and maintain upon said lands, at least two crossings over said railroad tracks, with the necessary gates and bars.

"(4)   That prior to the commencement of the action, and on or about the 13th day of June, 1906, the plaintiff served upon the defendant a written notice, requiring defendant to provide said crossings and said gates and bars, but that the defendant failed and refused to comply with said notice, and still fails and refuses so to do.

"(5)   That by reason of the premises, the defendant has become indebted to the plaintiff in the sum of two hundred fifty ($250.00) dollars by virtue of the provisions of section 7808 of Pierce's Washington Code, and Chapter 88 of the Session Laws of 1907.

"Wherefore plaintiff demands judgment against the defendant for the sum of $250, and for costs of suit."

To this complaint the defendant interposed a demurrer, on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendant electing to stand on its demurrer and refusing to plead further, judgment was given in favor of the plaintiff according to the prayer of his complaint, from which the defendant has appealed.

The action was prosecuted under § 2 of the act of March 15, 1893, Laws 1893, p. 418, entitled, "An act to protect the owners of stock from injury thereto by moving railway trains, declaring the law of negligence and providing for a reasonable attorney's fee in all actions for such injury." This act contains four sections. Section 1 provides that in all actions against persons or corporations owning or operating steam railroads to recover for injuries to stock, proof that the track was unfenced shall be *prima facie* evidence of negligence. Section 2 provides as follows:

"When any person or corporation, owning or operating a railroad, shall fence the railroad track through the occupied or enclosed or cultivated lands of any individual or corporation it shall be the duty of said person or corporation, at

their expense, to put in place and maintain such crossings with gates or bars as may be necessary to give the owner, together with his stock, access to the several parts of his occupied or enclosed and cultivated lands.  Persons holding or occupying land under any of the land laws of the United States, or by contract of purchase from any land grant railroad or under equitable title of any kind which gives them the right of occupancy, shall be considered as the owners of the land so held and occupied for the purposes of this act. Failure to provide such crossings with gates or bars for sixty days after written notice from the owners requiring the same, shall subject the person or corporation in default to a penalty of not greater than two hundred and fifty dollars, to be recovered by the owner of the land by action in the superior court of the county:  Provided, That no more than one crossing in every half mile shall be required under this act upon the property of any one owner."  Rem. & Bal. Code, § 8729.

Section 3 provides that the person or corporation owning or operating the railroad shall be subject to a penalty in double the market value of the stock injured or killed, in case of failure to notify the owner within 48 hours after the accident; and section 4 allows a reasonable attorney's fee to the plaintiff in any such action.  Sections 3 and 4 of this act were declared unconstitutional by this court in *Jolliffe v. Brown*, 14 Wash. 155, 44 Pac. 149, 53 Am. St. 868.  An act covering this same general subject was approved March 16, 1903, Laws 1903, p. 332, entitled, "An act compelling railroads to fence their rights of way and to protect the owners of stock injured by moving railway trains, declaring a law of negligence with regard to stock injured by railway trains."  Section 1 of this act reads as follows:

"Every person, company or corporation having the control or management of any railroad shall, within six months after the passage of this act, outside of any corporate city or town, and outside of the limits of any side track or switch, cause to be constructed and maintained in good repair on each side of said railroad, along the line of said rights of way of such person, company or corporation operating the same, a

substantial fence, and at every point where any roadway or other public highway shall cross said railroad, a safe and sufficient crossing must be built and maintained, and on each side of such crossing and at each end of such side track or switch, outside of any incorporated city or town, a standard cattle guard: Provided, That any person holding land on both sides of said right of way shall have the right to put in gates for his own use at such places as may be convenient."

A third act covering the same subject was approved March 19, 1907, Laws 1907, p. 169, entitled, "An act compelling railroads to fence their rights of way and to protect the owners of stock injured by moving railway trains, declaring a law of negligence with regard to stock injured by railway trains." The only substantial difference between the acts of 1903 and 1907 lies in the fact that the latter act extends to and includes electric roads. Rem. & Bal. Code, § 8730 et seq.

Under the foregoing facts the appellant contends that the acts of 1903 and 1907 repealed the act of 1893 by implication. This contention must be sustained. All three acts relate to the same subject-matter; namely, the liability of railroads for failure to fence their tracks. Each act makes provision for crossings where the same person owns land on both sides of the track or right of way. The act of 1893 required persons or corporations owning or operating the railroad, "at their expense, to put in place and maintain such crossings with gates or bars as may be necessary to give the owner, together with his stock, access to the several parts of his occupied or enclosed and cultivated lands." On the other hand, the acts of 1903 and 1907 provide, "That any person holding land on both sides of said right of way shall have the right to put in gates for his own use at such places as may be convenient." There is a palpable and irreconcilable conflict between these several acts. Under the earlier act, the duty to place and maintain gates and crossings was imposed on the person or corporation owning or operating the

32—57 WASH.

railroad, while under the later acts the duty is as clearly imposed on the landowner. The latter acts contain no express repealing clause, and repeals by implication are not favored, but the legislative intent, when once ascertained, is controlling. As said by this court in *State ex rel. Great Northern R. Co. v. Railroad Commission,* 52 Wash. 33, 100 Pac. 184:

"So that it becomes a question altogether of the construction of the act of the legislature, and the duty of the court is to ascertain the legislative intent. While it is true that the former acts have not been specifically repealed, and while it is also unquestionable that repeals by implication are not favored, it is as well established that, where there is a conflict between a statute and a subsequent statute, the subsequent statute being the later expression of the legislative will upon the subject, must be considered in force and to operate as a repeal by implication of all prior acts or parts of acts in conflict therewith."

When we look at these different acts, covering as they do the same subject-matter, the fencing of railroads and the maintenance of crossings, we see no escape from the conclusion that the act of 1893 has been abrogated and repealed. The complaint also refers to the act of 1907, but there is nothing in that act to support an action of this kind.

The judgment is therefore reversed with directions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

GOSE, CHADWICK, FULLERTON, and MORRIS, JJ., concur.