IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78353-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| NATHAN TERRELL WILSON, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: November 25, 2019 |

SMITH, J.— In 2016, the State charged appellant, Nathan Wilson, with three separate offenses: (1) second degree murder with a firearm enhancement; (2) first degree assault with a firearm enhancement; and (3) attempted second degree robbery. The three charges arose out of separate and distinct criminal conduct. In a global plea agreement, Wilson pleaded guilty to second degree murder and first degree assault, both serious violent offenses. The State agreed to, among other things, (1) drop the attempted second degree robbery charge; (2) dismiss the firearm enhancements; and (3) request a sentence of 171 months incarceration for the second degree murder conviction consecutive to 93 months incarceration for the first degree assault conviction, and a total of 36 months community custody for both convictions to run concurrently.

The sentencing court, however, concluded that it did not have discretion to issue the sentence as agreed. Specifically, the court determined the sentence was a hybrid sentence. The court instead sentenced Wilson to 171 months confinement consecutive

to 93 months confinement and 36 months of community custody consecutive to 36 additional months of community custody. On appeal, Wilson argues that: (1) the trial court had discretion to issue the recommended sentence as an exceptional sentence; (2) his trial counsel were ineffective because they failed to request an exceptional sentence; and (3) the trial court erred when it imposed supervision fees because Wilson is indigent. We disagree with regard to the court's ability to impose the recommended hybrid sentence. We further conclude that Wilson was not deprived of effective assistance of counsel because requesting an exceptional sentence would have violated his plea agreement. But we remand to the sentencing court to strike the discretionary supervision fees.

## FACTS

In October 2015 and July 2016, the Seattle Police Department identified Wilson as the primary suspect in two shootings, one of which caused the death of Damon Brown.[1] In March of 2018, the State charged Wilson by separate information for: (1) intentional second degree murder with a firearm under RCW 9A.32.050(1)(a) (Count 1); (2) assault in the first degree with a firearm enhancement under RCW 9A.36.011 (Count 2); and (3) attempted robbery in the second degree under RCW 9.94A.533(3).

After months of negotiations, the State and Wilson chose to resolve all charges in an indivisible plea deal. As the global resolution, Wilson pleaded guilty to second degree murder and first degree assault. The State consented to dismiss the attempted robbery charge, drop all firearm enhancements, file no additional charges, and reach an

---

[1] Wilson appeals the judgment and sentence for his first degree assault charge on the same grounds as those contained herein. The case number is 78425-1-I.

2

agreement regarding the sentencing recommendation. Specifically, and at issue on appeal, the State agreed to: (1) request a mid-range sentence of 171 months of incarceration for Count 1 consecutive with a low-end standard range of 93 months of incarceration for Count 2; and (2) two concurrent 36-month community custody terms. The plea agreement informed Wilson, among other things, that the trial court was not bound to follow the sentencing recommendation and that unless the court finds substantial and compelling reasons not to, or both parties stipulate to an exceptional sentence, the court must impose a standard range sentence. Wilson accepted the plea agreement.

Prior to the sentencing hearing, the court—citing State v. Smith, 142 Wn. App. 122, 173 P.3d 973 (2007)—sought clarification regarding its authority to impose the concurrent community custody terms in light of the fact that the incarceration terms were to run consecutively. At sentencing, the court concluded that it did not have the authority to grant the requested sentence because it could not order a hybrid sentence. Given the mutual mistake of the parties, the State and the sentencing court acknowledged that Wilson had been misadvised on the consequences of his guilty plea and that he was entitled to withdraw his plea. Wilson declined, confirming that he understood the consequences of his decision. The court found that "Wilson [made] a knowing, intelligent, and voluntary decision to maintain his guilty plea." The court waived "*any* non-mandatory fines, fees, costs, and interests, except as to restitution." The court then sentenced Wilson to 171 months confinement for Count 1 consecutive with 93 months confinement for Count 2, and two 36-month terms of community custody for Count 1 and Count 2 served consecutively. Wilson now appeals.

## DISCUSSION

### Sentencing Authority

Wilson argues that the sentencing court had authority to impose a sentence in conformity with the agreed upon indivisible plea. Specifically, Wilson contends that the court had discretion to impose the sentence as an exceptional sentence, and its failure to recognize or exercise that discretion was reversible error. We disagree and conclude that the trial court lacked authority to impose the hybrid sentence.

The Sentencing Reform Act (SRA) instills "considerable discretion" in the sentencing court, but the court must "still . . . act within its strictures and principles of due process of law." State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). To this end, RCW 9.94A.589 and RCW 9.94A.535 govern Wilson's sentence and the availability of an exceptional sentence. As an initial matter, second degree murder and first degree assault are serious violent offenses governed by RCW 9.94A.589(1)(b). RCW 9.94A.030(47)(a). Under RCW 9.94A.589(1)(b), sentences for convictions of two or more serious violent offenses based on separate and distinct criminal conduct "shall be served consecutively." To that end, "[a] departure from the standards in RCW 9.94A.589(1) . . . governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in [RCW 9.94A.535]." RCW 9.94A.535. Specifically, RCW 9.94A.535 provides that "[t]he court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535.

"A trial court errs when it . . . operates under the mistaken belief that it did not

4

have the discretion to impose a mitigated exceptional sentence for which a defendant may have been eligible." State v. McFarland, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (internal quotations omitted). However, a court does not have discretion to issue a hybrid sentence involving both consecutive and concurrent terms for separate convictions. Smith, 142 Wn. App. at 127; see also, State v. Grayson, 130 Wn. App. 782, 783, 125 P.3d 169 (2005).

In State v. Smith, Smith pleaded guilty to one count of possession of stolen property in the first degree (Possession 1). 142 Wn. App. at 124. Smith failed to appear for his sentencing hearing "and the next day committed two more offenses: possession of stolen property in the first degree [(Possession 2)] and possession of cocaine" (Possession 3). Smith, 142 Wn. App. at 124. A jury convicted Smith of both offenses. Smith, 142 Wn. App. at 124. The sentencing court sentenced Smith to a Drug Offender Sentencing Alternative (DOSA) sentence for the subsequent convictions and a non-DOSA sentence for his prior guilty plea. Smith, 142 Wn. App. at 125. Specifically, the court sentenced Smith to: (1) 43 months non-DOSA incarceration for Possession 1 concurrent to 25 months DOSA incarceration for Possession 2 and nine months DOSA incarceration for Possession 3; and (2) 25 months DOSA community custody for Possession 2 concurrent to nine months DOSA community custody for Possession 3. Smith, 142 Wn. App. at 126. Smith therefore would serve part of his DOSA sentences concurrent to and part of his DOSA sentences consecutive to his non-DOSA sentence. Smith, 142 Wn. App. at 125. We held that the sentence was improper because RCW 9.94A.589(3) "does not authorize a hybrid model, where a sentence is concurrent in part and consecutive in part." Smith, 142 Wn. App. at 127.

Here, unlike <u>Smith</u>, the sentence is not a DOSA sentence, and the State concedes that RCW 9.94A.589(3) does not apply. But our reasoning in <u>Smith</u> does apply. That is, as with RCW 9.94A.589(3), nothing within RCW 9.94A.589(1)(b) and RCW 9.94A.535 suggests that the court may divide the sentence into parts and order some terms concurrently and others consecutively. Rather, the court "shall" issue the terms for serious violent offenses consecutively, *unless* it finds sufficient reason to impose concurrent exceptional sentences. <u>See</u> RCW 9.94A.589(1)(b) & RCW 9.94A.535. Because the recommended sentence involved consecutive terms of confinement and concurrent terms of community custody for the separate serious violent offenses, the sentence was an improper hybrid sentence. Thus, the sentencing court correctly concluded that it could not impose the recommended sentence.

Wilson disagrees, arguing that the trial court erred in failing to consider an exceptional sentence. Wilson relies on <u>In re Pers. Restraint of Mulholland</u>. There, following a single incident, a jury found Mulholland guilty of six counts of aggravated assault in the first degree and one count of drive-by shooting. <u>Mulholland</u>, 161 Wn.2d 322, 324, 166 P.3d 677 (2007). During sentencing, the court believed it had no discretion to impose concurrent sentences for the six separate serious violent offenses subject to RCW 9.94A.589(1)(b). <u>Mulholland</u>, 161 Wn.2d at 326. Our Supreme Court disagreed. The court concluded "that a plain reading of [RCW 9.94A.535] leads inescapably to a conclusion that exceptional sentences[—i.e. concurrent, rather than consecutive, sentences for the six serious violent offenses—]may be imposed" under RCW 9.94A.589(1)(b). <u>Mulholland</u>, 161 Wn.2d at 330. Additionally, the court could not "say that the sentencing court would have imposed the same sentence had it known an

6

exceptional sentence was an option" because the trial court "made statements on the record which indicated some openness toward an exceptional sentence, expressing sympathy toward Mulholland." Mulholland, 161 Wn.2d at 333-34. Therefore, the court remanded for re-sentencing. Mulholland, 161 Wn.2d at 335.

Mulholland is distinguishable for multiple reasons. First, it is true that Mulholland and additional case law hold that failure to consider an exceptional sentence is reversible error where the sentencing court operates under a misconception of law.[2] But Mulholland did not involve a hybrid sentence. And, as discussed above, the trial court correctly concluded that it lacked authority to impose the requested hybrid sentence. Therefore, the trial court did not operate under a misconception of law, which would require us to reverse.

Second, Wilson never asked the court for an exceptional sentence, and the court did not demonstrate a willingness to impose one. Specifically, unlike Mulholland, while the trial court showed some sympathy for Wilson's struggles, the record does not indicate it would issue an exceptional sentence. The court conceded it might have considered the agreed upon sentence had it believed it had the authority to issue it, but the court also stated that the offenses did not involve "just one snap decision[; but instead involved] two people and . . . also, a third pretty violent felony."

Finally, the court and the State gave Wilson multiple opportunities to withdraw his plea once the court determined it could not order concurrent community custody terms. At each point, Wilson chose to go forward with his plea and the sentencing knowing it

---

[2] Mulholland, 161 Wn.2d at 333; see also, State. McGill, 112 Wn. App. 95, 100, 47 P.3d 173 (2002) (holding that remand is not required when the reviewing court is confident that the trial court would impose the same sentence).

would involve 72 months of community custody. Thus, <u>Mulholland</u> does not control, and the court did not commit a reversible error when it failed to consider an exceptional sentence which was not brought to its attention.

In short, because the sentencing court did not have authority under the SRA to issue a hybrid sentence, Wilson did not seek an exceptional sentence, and the sentencing court did not indicate a willingness to impose an exceptional sentence, we affirm the sentences of confinement and community custody.

### Ineffective Assistance of Counsel

Wilson argues that he did not receive effective assistance of counsel because his trial counsel failed to ask for exceptional sentences. We disagree.

To succeed on an ineffective assistance of counsel claim, the defendant must satisfy a two prong test. "First, the defendant must show that counsel's performance was deficient[,]" <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), which "requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all of the circumstances." <u>State v. Thomas</u>, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To this end, the court engages "in a strong presumption of reasonableness." <u>Thomas</u>, 109 Wn.2d at 226. "Second, the defendant must show that the deficient performance prejudiced the defense," which requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have" differed. <u>Strickland</u>, 466 U.S. at 687, 694.

Here, Wilson fails on the first prong of the <u>Strickland</u> test because the actions of his trial attorneys were reasonable considering the circumstances. Specifically, in the signed plea agreement, Wilson and the State "agree[d] that neither party [would] seek

an exceptional sentence." Had Wilson's counsel violated this provision of the agreement and sought an exceptional sentence, the State no longer would have been bound by the plea to dismiss the firearm enhancements, the elimination of which shortened the standard range of Wilson's sentence by ten years. See RCW 9.94A.533(3)(a); see also, State v. Thomas, 79 Wn. App. 32, 36, 899 P.2d 1312 (1995) (holding that Thomas had no right to specifically enforce the plea agreement which he materially breached). Moreover, the court gave Wilson the chance to withdraw his plea after informing him of its inability to impose the recommended sentence. Wilson nonetheless elected to enter the guilty plea. The terms of the agreement, therefore, compelled Wilson's counsel not to seek an exceptional sentence. Thus, we conclude Wilson was not deprived of effective assistance of counsel.

Wilson relies primarily on State v. McGill. In McGill, a jury convicted McGill of two counts of delivery of cocaine and one count of cocaine possession with intent to deliver. 112 Wn. App. 95, 98, 47 P.3d 173 (2002). The sentencing court believed it did not have the authority to depart downward from the standard range. McGill, 112 Wn. App. at 96-97. McGill's counsel failed to bring precedent which authorized a downward departure to the attention of the sentencing court. McGill, 112 Wn. App. at 101. Thus, we concluded that McGill received ineffective assistance of counsel and vacated and remanded McGill's sentence for consideration of an exceptional sentence. McGill, 112 Wn. App. at 100. McGill is distinguishable because it did not involve a plea agreement. Unlike McGill, trial counsel acted reasonably when they followed the terms of a "very carefully negotiated resolution." Thus, McGill does not control.

9

### Costs of Community Custody Supervision

Wilson argues that the trial court erred when it imposed supervision fees prescribed by the Department of Corrections (DOC). We agree.

"House Bill 1783 amend[ed] the discretionary [legal financial obligation (LFO)] statute . . . to prohibit courts from imposing discretionary costs on a defendant who is indigent at the time of sentencing." State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). In Ramirez, our Supreme Court held that House Bill 1783's amendments apply prospectively to cases pending on appeal from judgment when House Bill 1783 became effective. 191 Wn.2d at 739. We review imposition of discretionary LFOs for abuse of discretion. Ramirez, 191 Wn.2d at 741-42.

As an initial matter, the State argues that we should not address this issue on appeal because Wilson did not object to the imposition of supervision costs at sentencing. The State relies on State v. Blazina, which holds that "[a] defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." 182 Wn.2d 827, 832, 344 P.3d 680 (2015). However, our Supreme Court decided Blazina prior to Ramirez. Moreover, the court ordered Wilson's judgment and sentence prior to House Bill 1783's effective date and prior to Ramirez.[3] Finally, at sentencing, the court stated it was waiving "*any* non-mandatory fines, fees, costs, and interests[.]" As such, Wilson had no reason to object because he believed the court waived all discretionary fees. Thus, because Wilson's case is still on direct appeal and no objection was warranted, we must address the propriety of the

---

[3] The sentencing court filed the judgment and sentence on April 20, 2018, House Bill 1783 became effective on June 7, 2018, and the court decided Ramirez in September of 2018.

supervision fee.

In State v. Lundstrom, "the trial court intended to impose only mandatory LFOs, [but] it imposed costs of community custody." 6 Wn. App. 2d 388, 396, n.3, 429 P.3d 1116 (2018). Division Two held that "costs of community custody . . . are discretionary LFOs." Lundstrom, 6 Wn. App. 2d at 396, n.3. The court reasoned that supervision fees are discretionary because RCW 9.94A.703(2)(d) states that "[u]nless waived by the court . . . the court shall order an offender to . . . [p]ay supervision fees as determined by the department." Lundstrom at 397, n.3 (quoting RCW 9.94A.703(2)(d)) (emphasis in original). The court remanded to the sentencing court to impose only discretionary LFOs. Lundstrom, 6 Wn. App. 2d at 396.

Here, the trial court found Wilson indigent under RCW 10.101.010(3)(d). Like in Lundstrom, at the sentencing hearing, the court ordered waiver of all discretionary fines, fees, and costs. But the court inadvertently included the cost for supervision in a standardized Appendix pertaining to community custody conditions. The community custody fees are discretionary LFOs whether or not they fall within the definition of "costs" under RCW 10.01.160. And because the legislature—through House Bill 1783—and our Supreme Court have made it clear that discretionary LFOs should be waived for an indigent defendant, we remand to the sentencing court to strike the discretionary supervision fees.

For the foregoing reasons, we affirm in part and remand in part.

WE CONCUR: